IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**MELVIN R. BROWN,**
      Plaintiff,

v.                                                                No: 3:07cv231/LAC/MD

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
      Defendant.
_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Brown's application for disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed.

## PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits claiming a disability onset date of September 7, 2001.  The claim was denied initially and on reconsideration and the plaintiff requested a hearing before an

Administrative Law Judge (ALJ). A hearing was held on May 30, 2006 at which plaintiff was represented by counsel and testified. A vocational expert also testified. The ALJ rendered an unfavorable decision on January 18, 2007 (tr. 15-25) and the Appeals Council declined review (tr. 5-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe impairments of (1) degenerative cervical disease and moderate spondylosis at C6-C7, (2) hypertension, and (3) hepatitis C, but that he did not have a condition or combination of conditions that met or equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; that he had the residual functional capacity to perform work activities at the medium level, limited only by the inability of pulling up no more than 30 pounds; that he was an individual approaching advanced age with a high school education and was able to return to his past work as a locksmith and supply officer; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber*

*v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  If the claimant establishes such an impairment,

the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The plaintiff's medical history is not entirely complete but indicates that he was injured during his employment on August 8, 2001.  He was seen by a Dr. Sackheim from the spring of 2002 through January 2003.  An MRI performed on April 10, 2002 showed disc herniations in the neck at C3-4 and C6-7 with impingement in the subarachnoid space and mild bilateral foraminal encroachment at C6-7 (tr. 185).  An MRI of the lumbar spine dated April 3, 2002 demonstrated small subligamentous herniations at L3-4, L4-5, and L5-S1 with mild ventral impingement of the dural sac (tr. 185).  Dr. Sackheim treated plaintiff conservatively, and saw him for the last time on January 24, 2003 (tr. 192-200).

On November 7, 2002, plaintiff began treatment at the local clinic of the Department of Veterans Affairs (VA).  He complained of depression and anger over his physical condition, and indicated that he was currently consulting a pain management specialist, Dr. Sackheim.  Records from the VA Clinic are somewhat spotty but note, among other things, that plaintiff was awarded a forty percent service connected disability for fibromyalgia and depression (tr. 316).  On September 11, 2003, plaintiff was examined at the rheumatology clinic by a VA physician, Robert F. Howard, M.D.,[1] apparently for a second opinion concerning plaintiff's fibromyalgia, depression and chronic neck pain.  Plaintiff told Dr. Howard that he had positive MRI scans showing two herniated discs in the neck and three herniated discs in the low

---

[1]  Dr. Howard's specialty, if any, does not appear in the record.

back but had been told that he was not a candidate for surgery. He also stated that he had a fibromyalgia diagnosis from the VA. On physical examination Dr. Howard did not note any difficulties with reflexes or strength, but in the musculoskeletal examination he noted that "essentially all fibromyalgia tender points are positive; several with 'jump sign.'" There was full passive range of motion but with pain and tenderness. Dr. Howard's impression was fibromyalgia and chronic upper back and low back pain, status post multiple traumatic events. He discussed with plaintiff the nature of fibromyalgia and recommended aerobic exercise such as brisk walking as tolerated for 20 minutes, three times per week, and referral to the pain clinic for chronic back pain, with follow up in the rheumatology clinic at six months (tr. 287-289).

January 27, 2004 records of the VA pain management clinic noted that plaintiff had cervical and lumbar spondylosis but that he was exaggerating his symptoms and was seeking compensation (tr. 276). A later staff discussion was recorded as noting that plaintiff self reported the worst pain imaginable but at the same time evidenced a very high level of treatment resistance (tr. 277). A March 1, 2004 note from the VA pain management clinic indicated that plaintiff's pain reporting seemed excessive (tr. 265). There is no record that plaintiff was returned to rheumatology as suggested by Dr. Howard.

Plaintiff had two physical examinations by independent physicians. Richard Lucey, M.D. did not offer a diagnosis or restrictions (tr. 234-239) and C. W. Koulisis, M.D., noted degenerative cervical disc disease and complaints of low back pain, but found no objective evidence of either other than x-rays showing moderate spondylosis (tr. 227-229).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to find that some of his conditions were severe, in failing properly to discount his subjective complaints of

pain, and in determining his residual functional capacity, and that plaintiff was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical and mantal condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

### Severe impairments.

Plaintiff first contends that the ALJ erred in failing to find that three of his medical conditions - fibromyalgia, low back pain, and mental impairment - were severe. At step two the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 1520(c). The burden at this step is on the claimant. *Chester v. Bowen, supra.* The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
>
> **(a) Non-severe impairment(s).** An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> **(b) Basic work activities.** When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521. The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:

>**As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.**

SSR 85-28, 1985 WL 56856.

In *Brady v. Heckler*, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue. And the ALJ's findings must be supported by substantial evidence.

<u>Fibromyalgia.</u>

Plaintiff contends that he has fibromyalgia; the Commissioner on appeal contends that he does not; the ALJ did not mention the disease. The diagnosis of fibromyalgia is based largely on a patient's subjective complaints, and positive laboratory findings are simply unavailable. The disease has been recognized by The American College of Rheumatology (ACR) as both real and difficult to confirm:

> Fibromyalgia is especially confusing and often misunderstood because almost all its symptoms are also common in other conditions. . . . Unfortunately, because certain symptoms lack physical and laboratory findings (signs), but depend mostly on a person's report of complaints and feelings (symptoms), these syndromes are often viewed as not being real or important.

Arthritis Foundation & American College of Rheumatology, Arthritis Information: Fibromyalgia (1992).

The ACR has developed diagnostic criteria for fibromyalgia. A person can be affirmatively diagnosed with the condition if he or she has widespread pain in combination with tenderness in at least 11 of 18 specific tender point sites. *See* National Institute of Arthritis and Musculoskeletal and Skin Diseases, *Questions and Answers About Fibromyalgia* (1999), available at http://www.niams.nih.gov/hi/topics/fibromyalgia/fibrofs.htm. The Seventh Circuit has held that requiring positive laboratory findings is error in cases of this nature. *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996) (ALJ erred in finding claimant non-disabled because of lack of positive laboratory tests) (cited approvingly in *Stewart v. Apfel*, 245 F.3d 793 (11th Cir. 2001) (table), 2000 U.S. App. LEXIS 33214 (unpublished opinion)[2]). In *Stewart*, the Court reviewed medical research on fibromyalgia, noting that it often lacks medical or laboratory signs, is generally diagnosed mostly on an individual's described symptoms, and its hallmark is a lack of objective evidence. Thus, the ALJ's determination that a fibromyalgia claimant's testimony was incredible, based on the lack of objective evidence documenting the impairment, was reversed. *Stewart,* 245

---

[2] Unpublished decisions of this court are not binding precedent. See 11th Cir. R. 36–2.

Case No: 3:07cv231/LAC/MD

F.3d at 793, 2000 U.S.App. LEXIS 33214, at *9, n. 4.  More recently, the Eleventh Circuit addressed fibromyalgia in *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005), where it reiterated the impropriety of focusing on the absence of objective findings corroborating claims of the impairment.  Other Circuits that have considered the issue have found that fibromyalgia is a disease that can serve as the basis for a medically determinable impairment, even without positive laboratory findings.  *See, e.g.*, *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 817-18 (6th Cir. 1988) ("Fibrositis [now fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances," and diagnosis involves testing for focal tender points.)  Indeed, the Commissioner has recently instructed that in cases of chronic fatigue syndrome, a condition that, like fibromyalgia, is based largely on self-reported symptoms, "[p]ersistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points" is an example of a medical sign that establishes the existence of a medically determinable impairment.  Social Security Ruling 99-2p, 1999 WL 271569 (1999).

      Plaintiff contends that the ALJ failed entirely to mention his diagnosed fibromyalgia, much less include it as a severe condition.  In support of this position plaintiff cites pages in the record that mention fibromyalgia.  The defendant responds by showing that all such entries are statements by examining or treating physicians who were taking a history, but that none of them actually diagnosed fibromyalgia.  Since most of these physicians were mental health providers that is not surprising.  Also, some of the notes preceded plaintiff's claimed onset date and so did not occur during the relevant period.  The matter does not end there, however.

Case 3:07-cv-00231-LC-MD   Document 20   Filed 07/25/08   Page 10 of 11

Page 10 of 11

Both plaintiff and defendant have overlooked the examination of September 22, 2003, just ten days after plaintiff's onset date. Plaintiff was examined by Robert Howard, M.D., a VA physician at the request of plaintiff's regular VA physician, and was asked specifically to determine whether plaintiff had fibromyalgia, depression and chronic pain (tr. 287). Dr. Howard performed a complete physical examination, the relevant part of which stated: "Musculoskeletal - essentially *all fibromyalgia tender points are positive*; several with 'jump sign.'" (Tr. 288) (emphasis added). Dr. Howard also noted that range of motion tests elicited pain (*id.*). Dr. Howard's impression was fibromyalgia and chronic upper back and low back pain, status post multiple traumatic events (tr. 288-289).

It was error for the ALJ to ignore this evidence. The ALJ gave multiple reasons for not crediting the plaintiff's 40 % VA disability rating, and those reasons may be valid. However, the ALJ either missed or ignored Dr. Howard's examination and conclusions. When an ALJ fails to consider a claimant's condition despite evidence in the record of the diagnosis, remand is required. *Vega v. Commissioner of Social Security*, 265 F.3d 1214, 1220 (11th Cir. 2001). This court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Title 42 U.S.C. § 405(g). Remand is ordinarily appropriate for rehearing if the Commissioner failed to apply the law and regulations, or where the taking of additional evidence is necessary. It is the law of this Circuit that where the ALJ fails properly to discount the opinion of the treating physician, he is held as a matter of law to have accepted it as true. *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986). When evidence has been fully developed and points unequivocally to a specific finding, the court may enter the finding that the Commissioner should have made. The court can reverse without remand where the Commissioner's decision is in plain disregard of the law and evidence. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *MacGregor, supra; Hale, supra*. Moreover,

the failure to apply the correct legal standard is grounds for reversal, not remand. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1983).

Here the ALJ did not address plaintiff's fibromyalgia at all, and the case should be remanded to the Commissioner for further consideration.  Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be REVERSED, that the Commissioner be ordered to remand this case to the ALJ for further consideration consistent with this Report and Recommendation, that judgment be entered in favor of plaintiff pursuant to sentence four of 42 U.S.C. § 405(g), and that the clerk be directed to close the file.

At Pensacola, Florida this 25th day of July, 2008.

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988**